**HOSIDEN CORPORATION, et al., Plaintiffs,**

v.

**UNITED STATES, Defendants.**

**Court No. 91–10–00720.**

United States Court of International Trade.

Dec. 29, 1992.

---

Adduci, Mastriani, Meeks & Schill, Louis S. Mastriani, Anri Suzuki, and Gregory C. Anthes, Washington, DC, for plaintiff Hosiden Corp.

Graham & James, Lawrence R. Walders and Brian E. McGill, Washington, DC, for plaintiffs Hitachi, Ltd., Hosiden Corp., Matsushita Elec. Indus. Co., Ltd., NEC Corp., Seiko Epson Corp., Sharp Corp., and Toshiba Corp.

Baker & McKenzie, Thomas P. Ondeck and Kevin O'Brien, Washington, DC, for plaintiff Apple Computer, Inc.

O'Melveny & Myers, Kermit W. Almstedt, Peggy A. Clarke, Greta L.H. Lichtenbaum, and Craig L. McKee, Washington, DC, for plaintiff Intern. Business Machines Corp.

Vinson & Elkins L.L.P., Theodore W. Kassinger, Charles D. Tetrault, and Rosemary E. Gwynn, Washington, DC, for plaintiff Compaq Computer Corp.

Pennie & Edmonds, Arthur Wineburg and Marcia H. Sundeen, Washington, DC, for plaintiff Tandy Corp.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Vanessa P. Sciarra, with Marguerite E. Trossevin, of counsel, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, Lyn M. Schlitt, General Counsel, James A. Toupin, Asst. General Counsel, U.S. Intern. Trade Com'n, Paul R. Bardos, Washington, DC, for defendant.

Jones, Day, Reavis & Pogue, John E. Benedict, David G. Schryver, and Thomas F. Cullen, Jr., Washington, DC, for defendant-intervenor Texas Instruments Inc.

## MEMORANDUM AND ORDER

GOLDBERG, Judge:

Plaintiffs, Hosiden Corporation, et al., bring this consolidated action challenging the final affirmative antidumping determination by the United States Department of Commerce, International Trade Administration ("Commerce") in *High Information Content Flat Panel Displays and Display Glass Therefor From Japan*, 56 Fed.Reg. 32,376 (1991), the final affirmative injury determination by the United States International Trade Commission ("Commission") in *High Information Content Flat Panel Displays and Subassemblies Thereof From Japan*, USITC Pub. 2413, Inv. No. 731–TA–469 (Aug.1991), and the antidumping duty orders entered therefrom.

This matter is before the court pursuant to plaintiffs' motion for review of the administrative determinations upon the agency record under USCIT Rule 56.1. The court has jurisdiction under 28 U.S.C. § 1581(c) (1988). The court remands the Commission's determination. The court reserves decision on its review of the challenged Commerce determinations pending the remand results from the Commission.

## BACKGROUND

On July 18, 1990, Advanced Display Manufacturers of America, Inc. ("Advanced Display") and its individual member companies, Planar Systems, Inc., Plasmaco, Inc., OIS Optical Imaging Systems, Inc., The Cherry Corporation, Electro–Plasma, Phototonics Technology, Inc., and Magnascreen Corporation, filed a petition with Commerce and the Commission. The petition alleged that imports of certain high-information content flat panel displays ("HIC FPDs") and subassemblies thereof from Japan were being sold in the United States at less than fair value and that an industry in the United States was materially injured, threatened with material injury, or materially retarded from being established by reason of such imports.

The Commission instituted a preliminary antidumping investigation on July 24, 1990. *High–Information Content Flat Panel Displays and Subassemblies Thereof From Japan*, 55 Fed.Reg. 30,042 (1990).

Commerce initiated an antidumping duty investigation on August 14, 1990. *High–Information Content Flat Panel Displays and Subassemblies Thereof From Japan*, 55 Fed.Reg. 33,146 (1990).

On September 4, 1990, the Commission issued a preliminary affirmative determination. The Commission found one like product for the imported merchandise—all types of HIC FPDs and subassemblies thereof. The Commission determined that there was a reasonable indication that the domestic producers of all types of HIC FPDs were materially injured by reason of alleged less than fair value imports of HIC FPDs and subassemblies thereof from Japan. *High–Information Content Flat Panel Displays and Subassemblies Thereof From Japan*, USITC Pub. 2311, Inv. No. 731–TA–469 (Preliminary) (Sept. 1990).

On February 21, 1991, Commerce issued a preliminary determination that all HIC FPDs and subassemblies thereof from Japan comprised a single class or kind of merchandise, and that the subject merchan-

dise was being, or was likely to be, sold in the United States at less than fair value. *High–Information Content Flat Panel Displays and Subassemblies Thereof From Japan,* 56 Fed.Reg. 7008 (1991). In addition, Commerce preliminarily revised the scope of determination by limiting the definition of subassemblies to include only processed glass substrates, whether or not integrated with additional components. *Id.* Finally, Commerce ordered that cash deposits or a bond be required on the subject imports in the amount of the estimated preliminary dumping margins, which ranged from 0 to 4.6 percent *ad valorem. Id.*

Following Commerce's affirmative preliminary determination, the Commission instituted a final material injury investigation on March 27, 1991. *High–Information Content Flat Panel Displays and Subassemblies Thereof From Japan,* 56 Fed.Reg. 12,741 (1991) (final antidumping investigation).

Commerce issued a final affirmative determination on July 16, 1991. *High Information Content Flat Panel Displays and Display Glass Therefor From Japan,* 56 Fed.Reg. 32,376 (1991) (final determination). In its determination, Commerce found that the imported HIC FPDs covered by the petition constituted four separate classes or kinds of merchandise: active-matrix liquid crystal displays ("AMLCD") FPDs; passive-matrix liquid crystal displays ("PMLCD") FPDs; gas plasma FPDs; and electro-luminescent ("EL") FPDs.

After an investigation of each of the four classes of merchandise, Commerce determined that no petitioner produced PMLCD FPDs. *High Information Content Flat Panel Displays and Display Glass Therefor From Japan,* 56 Fed.Reg. 32,376 (1991). Commerce then evaluated whether petitioners had standing to file a petition with respect to this class of merchandise. *Id.* In its standing determination, Commerce did not follow the Commission's preliminary finding that there was one like product for the subject imported merchandise, namely all HIC FPDs, but instead re-

examined the factors generally considered by the Commission for "like product" determinations. Commerce found four distinct like products: domestic AMLCD FPDs; domestic PMLCD FPDs; domestic gas plasma FPDs; and domestic EL FPDs. *Id.* Since no petitioner produced the like product for imported PMLCD FPDs—domestic passive-matrix LCD FPDs—Commerce determined that the petitioners were not interested parties and did not have standing with respect to an investigation of PMLCD FPDs. Therefore, Commerce dismissed that part of the petition involving passive-matrix LCD FPDs. *Id.*

In its investigation of gas plasma FPDs, Commerce determined that such merchandise was not, and was not likely to be sold in the United States at less than fair value, and dismissed the investigation concerning such imported merchandise. *High Information Content Flat Panel Displays and Display Glass Therefor From Japan,* 56 Fed.Reg. 32,376 (1991).

In its investigation of AMLCD FPDs and EL FPDs, Commerce determined that each was being sold or was likely to be sold in the United States at less than fair value, as provided in section 735(a) of the Tariff Act of 1930, as amended (19 U.S.C. § 1673d(a)). *High Information Content Flat Panel Displays and Display Glass Therefor From Japan,* 56 Fed.Reg. 32,376 (1991). Commerce determined a weighted average margin of 62.67 percent for all imports of AMLCD FPDs, and 7.02 percent for all imports of EL FPDs. *Id.*

The majority of the Commission published its final affirmative determination in the Federal Register on September 5, 1991. *High–Information Content Flat Panel Displays and Subassemblies Thereof From Japan,* 56 Fed.Reg. 43,937 (1991); also published at *Certain High–Information Content Flat Panel Displays and Display Glass Therefor From Japan,* USITC Pub. 2413, Inv. No. 731–TA–469 (Aug.1991). The Commission broadened Commerce's domestic like product finding and determined that there was one like product for AMLCD FPDs and EL FPDs viewed together, namely all domestic HIC

FPDs and the display glass therefor. *Id.* The Commission then determined that the domestic producers of HIC FPDs and display glass therefor were materially injured by reason of cumulated imports of AMLCD FPDs and EL FPDs from Japan. *Id.*

On September 4, 1991, Commerce published antidumping duty orders on imports of AMLCD FPDs and EL FPDs and display glass thereof from Japan. *High Information Content Flat Panel Displays and Display Glass Therefor from Japan,* 56 Fed.Reg. 43,741 (1991).

Thereafter, this action was commenced. Advanced Display challenged several aspects of Commerce's less than fair value determination, while the remaining plaintiffs challenged both Commerce's and the Commission's determinations. In connection with the Commission's injury determination, the remaining plaintiffs argued that the Commission failed to conduct separate injury investigations regarding sales at less than fair value of AMLCD FPDs and EL FPDs individually. These plaintiffs also asserted that the Commission incorrectly broadened its determination of the domestic industry to include producers of all HIC FPDs.

Plaintiffs also contended that the Commission's determination of like product corresponding to the imported articles, and its material injury finding were not supported by substantial evidence. Because the court remands the case to the Commission based upon the Commission's preliminary interpretation of the governing statutes, the court need not address these arguments by plaintiffs at this time.

## DISCUSSION

### A. The Commission's Injury Analysis

Plaintiffs first claim that the Commission failed to conduct two investigations into whether individual domestic industries were injured "by reason of" imported AMLCD FPDs and EL FPDs, viewed independently of each other. Instead, the Commission evaluated whether a single domestic industry suffered material injury by reason of sales of imported AMLCD FPDs

and EL FPDs, cumulated together. Plaintiffs argue that the Commission was required to separately investigate whether sales at less than fair value of AMLCD FPDs materially injured domestic producers of its like product, and whether domestic producers of a like product corresponding to EL FPDs were materially injured by sales of imported EL FPDs.

The Commission responds that it is not required to conduct separate investigations. The Commission maintains that according to statute its job is simply to evaluate whether domestic producers of a like product of the merchandise under investigation are being injured by reason of imports. The Commission need only determine "what is the like product, what is the domestic industry but there is no need for a separate determination with respect to each class or kind" of merchandise designated by Commerce. (Tr. to Oral Argument on August 13, 1992 at 146.) The Commission contends that it is up to the Commission to define "the number of like products that correspond to a class or kind of merchandise or the number of classes or kinds that correspond to a like product." (Commission Memorandum in Response to Plaintiffs' Motions for Judgment on the Agency Record "Commission Memorandum" at 11.)

The Commission bases its position on the assertions that Commerce's class or kind finding and the Commission's like product determination are unrelated. Commerce's class or kind determination only binds the Commission as to what imports are under investigation. The Commission's "like product definition need not duplicate exactly or be coterminous with Commerce's class or kind finding." (Commission Memorandum at 14 (citation omitted).) For example, the Commission has the statutory authority to find several like products corresponding to a single class or kind. *See Badger–Powhatan v. United States,* 9 CIT 213, 608 F.Supp. 653 (1985). Moreover, in *Cyanuric Acid and its Chlorinated Derivatives from Japan,* USITC Pub. 1513, Inv. No. 731–TA–136 (Final) (April 1984), the Commission treated three classes or kinds of merchandise as a single like product.

The Commission concludes that in this action, the Commission determined that one like product—all domestic HIC FPDs—corresponded to the totality of the merchandise under investigation. Since the determination of like product was identical for both AMLCD FPDs and EL FPDs, the Commission need not conduct two separate, and redundant, investigations into whether imports of AMLCD FPDs and imports of EL FPDs caused injury to domestic producers of the same like product.

■ However, "statutory interpretation begins with the language of the statute itself." *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 557–558, 110 S.Ct. 2126, 2130–2131, 109 L.Ed.2d 588 (1990). "If the intent of Congress is clear [from the language of the statute], that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The "traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress." *Serampore Industries Pvt. Ltd. v. United States Department of Commerce*, 11 CIT 866, 869, 675 F.Supp. 1354 (1987) quoting *Board of Governors of Federal Reserve System v. Dimension Financial Corp.*, 474 U.S. 361, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986).

■ It is only "if the statute is silent or ambiguous with respect to the specific issue, [that] the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

■ The court finds that in this case, the Commission's interpretation of its statutory duties were not in accordance with the plain language of the statute, and "alter[ed] the clearly expressed intent of Congress." *Serampore Industries*, 11 CIT at 866, 869, 675 F.Supp. 1354.

Title 19 of the United States Code, Section 1673 (1988) provides that antidumping duties shall be imposed where:

"(1) the administering authority determines that *a class or kind* of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and

(2) the Commission determines that—

(A) an industry in the United States

(i) is materially injured, or

(ii) is threatened with material injury, or

(B) the establishment of an industry in the United States is materially retarded, by reason of imports of *that merchandise* or by reason of sales (or the likelihood of sales) of that merchandise...."

(emphasis added).

Title 19 of the United States Code, Section 1677(4)(A) (1988) defines the term "industry" as the "domestic producers as a whole of a like product." Like product is in turn defined as "a product which is like, or in the absence of like, most similar in characteristics and uses with, the article subject to an investigation...." 19 U.S.C. § 1677(10) (1988).

■ Title 19 of the United States Code, Section 1673 (1988) establishes distinct roles for Commerce and the Commission. Commerce must determine the scope of the investigation by determining the class or kind of merchandise subject to investigation. *See American NTN Bearing Manufacturing Corp. v. United States*, 14 CIT 320, 739 F.Supp. 1555 (1990). If Commerce finds that a class or kind of merchandise is being sold at less than fair value, the statute unequivocally provides that Commission then must determine whether a United States industry is being injured, threatened with injury, or materially retarded by reason of imports of *that* merchandise. The plain language of the statute therefore limits the Commission to individual determinations of whether a domestic industry producing products like each separate class or kind of imported article is being injured by each separate class or kind of imported merchandise designated by Commerce. In-

deed, both the Commission in its regulation, 19 C.F.R. § 207.2(e) (1992), and the court in *Algoma Steel Corp. v. United States,* 12 CIT 518, 522–523, 688 F.Supp. 639 (1988), *aff'd,* 7 Fed.Cir. (T) 154, 865 F.2d 240, *cert. denied,* 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 590 (1989), recognized that the Commission is so confined.[1]

■ The Commission's regulations define the term "injury" to mean:

> [m]aterial injury or threat of material injury to an industry in the United States, or material retardation of the establishment of an industry in the United States, by reason of imports into the United States of *a class or kind of merchandise which is found by the administering authority* to be ... sold, or likely to be sold, at less than its fair value.

19 C.F.R. § 207.2(e) (1992) (emphasis added).

The court in *Algoma Steel Corp. v. United States,* 12 CIT 518, 522–523, 688 F.Supp. 639 (1988), *aff'd,* 7 Fed.Cir. (T) 154, 865 F.2d 240 (1989), *cert. denied,* 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 590 (1989) stated in reference to the antidumping statute:

> [i]n applying this statute, [the Commission] does not look behind [Commerce's] determination, but accepts [Commerce's] determination as to which merchandise is in the class of merchandise sold at [less than fair value. The Commission], on the other hand, determines *what domestic industry produces products like the ones in the class defined by [Commerce]* and whether that industry is injured by the relevant imports.

The court finds the Commission's response unconvincing that regardless of the face of the statute, it may conduct a single investigation into like product because Commerce and the Commission's determinations are unrelated, and the Commission is not bound by Commerce's class or kind distinctions.

■ The court agrees with the Commission that clearly, both Commerce and the Commission have individual responsibilities. *See Torrington Co. v. United States,* 14 CIT 648, 747 F.Supp. 744 (1990), *aff'd,* 10 Fed.Cir. (T) ——, 938 F.2d 1278 (1991). "It is settled law that the [Commission's] like product determination is separate and distinct from [Commerce's] determination of the class or kind of merchandise." *Id.,* 14 CIT at 650, 747 F.Supp. 744 (citation omitted). Further, the Commission "has the right to make its own determination as to what should be considered a like product." *Id.* at 650–651, 747 F.Supp. 744 (citation omitted). The Commission may also properly find multiple like products within each class or kind of article defined by Commerce. *Sony Corp. of America v. United States,* 13 CIT 353, 712 F.Supp. 978 (1989); *American NTN Bearing Manufacturing Corp. v. United States,* 14 CIT 320, 739 F.Supp. 1555 (1990).

However, the Commission's extension of its right to make an independent like product determination to grant itself immunization from Commerce's class or kind distinctions is unwarranted. The Commission *"does not have the authority to modify [Commerce's] finding of class or kind...."* *Torrington Co. v. United States,* 14 CIT at 648, 650, 747 F.Supp. 744 (emphasis added) (citation omitted). Unlike a finding by the Commission that multiple

---

**1.** The court's ruling does not, of course, affect long settled law regarding the Commission's ability to determine the like product corresponding to each class or kind of article under investigation. The Commission's determination of which domestic product or products are "like" each class or kind of imported article is not limited in scope to that merchandise contained within Commerce's corresponding class or kind distinctions. *See Badger–Powhatan v. United States,* 9 CIT 213, 608 F.Supp. 653 (1985); *American NTN Bearing Manufacturing Corp. v. United States,* 14 CIT 320, 739 F.Supp. 1555

(1990). For example, the Commission may properly find multiple like products within each class or kind of article defined by Commerce. *Sony Corp. of America v. United States,* 13 CIT 353, 712 F.Supp. 978 (1989); *American NTN Bearing Manufacturing Corp.,* 14 CIT at 320, 739 F.Supp. 1555. The Commission may also deviate from the contentions regarding the scope of like product contained in the petition, provided its "determinations were supported by substantial evidence." *Torrington Co. v. United States,* 14 CIT 648, 650, 747 F.Supp. 744 (1990), *aff'd* 10 Fed.Cir. (T) ——, 938 F.2d 1278 (1991).

like products correspond to a single class or kind of merchandise, when it ignores Commerce's determination and conducts a single investigation, the Commission undermines Commerce's duties and fundamentally alters Commerce's finding of class or kind. By linking two classes of kinds of merchandise together for one investigation, the Commission essentially redraws Commerce's class or kind categories and decides in place of Commerce which articles fall within each class or kind of merchandise. For example, under the Commission's reasoning, if several classes or kinds of merchandise were involved, nothing prevented it from cumulating some classes or kinds and investigating those as a whole, while investigating others individually. The Commission's end result is a redefinition of Commerce's classes or kinds of merchandise that were to be investigated by the Commission.

The Commission's expansion and alteration of Commerce's class or kind determination can critically affect the outcome of its investigation. Cumulation of two or more classes or kinds of articles increases the diversity of merchandise for which the Commission seeks to find a "like product." This increase in diversity, of course, accordingly increases the totality of characteristics of the group—or class or kind—of merchandise for which the Commission determines a "like product." The Commission's definition of products "like" the newly created diverse class or kind of article under investigation is therefore expanded because it must take into account these increased characteristics.[2]

Correspondingly, the expanded definition of the domestic industry leads to a skewed causation determination. The Commission may find that the arbitrarily enlarged domestic industry was injured by reason of imports, when it would not have found injury to domestic industry producing a product like the actual class or kind of article designated by Commerce. The Commission may attribute injury caused solely by reason of imports of one class or kind of article to imports of another. For example, in this case, the Commission may have ascribed injury caused by imports of AMLCD FPDs to imports of EL FPDs, and vice versa.

Moreover, not only is the Commission's interpretation of its statutory responsibilities contrary to the statutory scheme, its construction is also inimical to Congress' grant of discretion to the Commission. The Commission's argument presumes that it may combine classes or kinds of merchandise without a finding of whether, for instance, EL FPDs and AMLCD FPDs, taken together, would have the same like product and injury determinations as each would viewed individually.

■ An agency's "[e]xpert discretion is the lifeblood of the administrative process, but 'unless we make the requirements for administrative action strict and demanding, *expertise*, the strength of modern government, can become a monster which rules with no practical limits on its discretion.' Congress did not purport to transfer its legislative power to the unbounded discretion of the regulatory body." *Burlington Truck Lines v. United States*, 371 U.S. 156, 167, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962) (quoting *New York v. United States*, 342 U.S. 882, 884, 72 S.Ct. 152, 152, 96 L.Ed. 662 (1951); *Federal Communications Comm'n v. RCA Communications, Inc.*, 346 U.S. 86, 90, 73 S.Ct. 998, 1002, 97 L.Ed. 1470 (1953)) (citations omitted). An agency must "disclose the basis of its order" and "give clear indication that it has exercised the discretion with which Con-

2. A practical example perhaps best illustrates this result. According to the Commission's position, if Commerce determined that a class or kind of imported oranges and a separate class or kind of lemons were being sold at less than fair value, the Commission may, if it chooses, cumulate both classes or kinds together. The Commission would accordingly determine a "like product" corresponding to both oranges and lemons viewed as a group. Such a "like product" may well be all citrus fruits. However, had the Commission investigated each class or kind separately, the "like product" corresponding to the imported oranges would likely be all oranges, or a limited segment of citrus fruits. Similarly, the products "like" the imported lemons would not be all citrus fruits. The Commission's cumulation of the two classes or kinds of merchandise therefore results in an expanded definition of "like product."

gress has empowered it." *Id.* 371 U.S. at 168, 83 S.Ct. at 245 (quoting *Phelps Dodge Corp. v. Labor Board,* 313 U.S. 177, 197, 61 S.Ct. 845, 854, 85 L.Ed. 1271 (1941)); *see also Bando Chemical Industries, Ltd v. United States,* No. 92–26 (CIT 1991). An agency "must make findings that support its decision, and those findings must be supported by substantial evidence." *Burlington,* 371 U.S. at 168, 83 S.Ct. at 245. The agency must articulate a rational connection between the facts found and the choice made. *Id.* at 168, 83 S.Ct. at 245.

■ In this case, the Commission made no finding whether or not combined classes or kinds of merchandise under investigation would lead to different like product and injury determinations than would individual inquiries. The Commission made no finding that a decision with this potential to affect the outcome of the final determination was within its discretion. The court can find no authority for the proposition that in this regard, Congress intended that the Commission may deviate from long settled law and make outcome determinative decisions of this nature without "findings that support its decision" and supporting those findings by substantial evidence.[3] *Id.* at 168, 83 S.Ct. at 245.

In conclusion, based upon the plain language of the statute, supporting case law, and the record before the court, the court finds that the Commission must conduct separate material injury investigations for each class or kind of merchandise designated by Commerce. Upon remand, the Commission must individually determine the domestic industry—the domestic producers of a like product corresponding to imported AMLCD FPDs, and whether that domestic industry was injured by reason of imports of AMLCD FPDs alone. Secondly, the Commission must determine the domestic producers of the like product corresponding to EL FPDs, and whether that domestic

industry was injured by reason of EL FPD importations.

### B. The Commission's "Like Product" Determination

Plaintiffs also argue that the Commission's "like product" determination under 19 U.S.C. §§ 1673 and 1677 was flawed for several reasons. Plaintiffs contend that Commerce explicitly determined the like products corresponding to AMLCD FPDs and EL FPDs, and the Commission is bound by those findings. Plaintiffs further assert that the Commission expanded the domestic industry to include "similar" products in addition to "like" products. Finally, substantial evidence did not support the Commission's determination that the like product for AMLCD FPDs and EL FPDs was all HIC FPDs.[4]

■ Plaintiff's first contention can be dismissed with little amplification. Title 19 of United States Code, Section 1673a (1988) provides that Commerce shall determine whether an antidumping petition was properly filed by an interested party on behalf of a domestic industry. The term "interested party" includes "a manufacturer, producer, or wholesaler in the United States of a like product." 19 U.S.C. § 1677(9)(C) (1988). In this case, Commerce determined that FPDs under investigation constituted four "like products" for standing purposes.

Pursuant to 19 U.S.C. §§ 1673 and 1677, the Commission is to determine whether domestic producers of a "product which is like, or in the absence of like, most similar in characteristic and uses with, the article subject to an investigation" suffered injury by reason of imports. 19 U.S.C. §§ 1673, 1677(4)(A), 1677(10) (1988). Here, the Commission found only one "like product".

Plaintiffs argue that the Commission was bound by Commerce's "like product"

---

**3.** A review of the record revealed no evidence demonstrating that cumulation was not determinative to the outcome of its investigation. Additionally, no evidence showed that if, in fact, cumulation affected its determination, the Commission found that such cumulation was warranted.

**4.** Because the court previously found that the Commission must conduct independent investigations for AMLCD FPDs and EL FPDs, this issue is rendered moot and need not be addressed.

determinations. However, "under the statutory scheme, [Commerce] and the Commission have separate and different, although related, duties and responsibilities in the administrative process by which dumping investigations are conducted and antidumping orders are issued." *Mitsubishi Electric Corporation v. United States*, 8 Fed.Cir. (T) ——, ——, 898 F.2d 1577, 1579 (1990). In *Algoma Steel Corp. v. United States*, 12 CIT at 518, 520, 688 F.Supp. 639, the court indicated that:

[i]t should also be noted that possibilities for [Commerce] and [the Commission] inconsistencies are built into the law. The very fact of separation of the two parts of the decisions required by the unfair trade laws may lead to superficial inconsistencies. As long as the inconsistencies resulting from the plain language of the statute do not lead to results which Congress could not have intended, they should be tolerated.

■ The court finds that Congress built into the plain language of 19 U.S.C. § 1673 (1988) two "like product" determinations. While both Commerce and the Commission are required to find "like product" corresponding to the article under investigation, their determinations are expressly meant to serve separate goals. Commerce determines the imported merchandise's "like product" in regard to its standing evaluation, while the Commission finds "like product" in connection with its injury determination. Because Congress explicitly provided separate "like product" responsibilities for Commerce and the Commission, the court finds that inconsistencies between Commerce and the Commission in determining "like product" such as those which arose in the case at bar are not "results which Congress could not have intended." *Id.*

Plaintiffs also assert that the Commission is bound by Commerce's determination through the doctrine of collateral estoppel. Under the doctrine, relitigation of factual matters is precluded when four factors are present: the issue previously adjudicated is identical with the present issue, the factual matter was actually litigated in the first

action, the previous determination of that issue was necessary to the end-decision previously made, and the party precluded was represented by counsel in the prior action. *PPG Industries, Inc. v. United States*, 14 CIT 522, 538, 746 F.Supp. 119 (1990).

Clearly, in the action before the court the issue was not identical in both proceedings. Commerce's "like product" determination concerned a petitioner's standing to bring an action, while the Commission's was made in regard to its injury finding. Moreover, Commerce's determination was not made in an adjudicatory proceeding. "Congress has stipulated than antidumping and countervailing duty proceedings are investigatory rather than adjudicatory in nature." *Avesta AB v. United States*, 12 CIT 493, 513, 689 F.Supp. 1173 (1988) (citation omitted).

Consequently, the court finds that the Commission was not bound by Commerce's determination of "like product," and the Commission properly determined on its own the "like product" corresponding to the imported merchandise.

The last question the court must address, therefore, is plaintiffs' argument that the Commission may never expand the definition of the domestic industry to include "similar" products when domestic producers manufactured products "like" the merchandise under investigation, as it did here. Plaintiffs essentially contend that because AMLCD FPDs and EL FPDs precisely identical to the articles under investigation were produced domestically, the Commission was prevented as a matter of law from enlarging its "like product" determination to include "similar" products such as all HIC FPDs, or some other segment of the HIC FPD industry.

■ Statutory and case law, the legislative history of the Trade Agreements Act of 1979, and previous practice by the Commission provide otherwise. The court accordingly finds that the Commission may interpret the term "like product" to include products other than those precisely identical to the article under investigation, provided its like product determination is "reasonable and supported by the evidence."

*Torrington,* 14 CIT at 648, 651, 747 F.Supp. 744.

Title 19 of United States Code, Section 1677(10) (1988) defines like product as one that "is like, or in the absence of like, most similar in characteristics and uses" with the article under investigation.

■ As noted in the legislative history of the Trade Agreements Act of 1979, the like product standard should not be interpreted "in such a narrow fashion as to permit minor differences in physical characteristics or uses to lead to the conclusion that the product and article are not "like" each other...." S.Rep. No. 249, 96th Cong., 1st Sess. 90–91 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 476–477. Neither should the definition of like product "be interpreted in such a fashion as to prevent consideration of an industry adversely affected by the imports under investigation." S.Rep. No. 249, 96th Cong., 1st Sess. 90–91 (1979), *reprinted in* 1979 U.S.C.C.A.N. 477.

The language of 19 U.S.C. § 1677(10) does not definitively indicate how Congress intended the Commission to interpret the terms "like" and "most similar." However, the legislative history specifically provides that Congress did not intend for the Commission to interpret the term "like product" to mean "only those products that are precisely identical" to the article under investigation. Congress indicated that the like product may contain "minor differences in physical characteristics or uses." S.Rep. No. 249, 96th Cong., 1st Sess. 90–91 (1979), *reprinted in* 1979 U.S.C.C.A.N. 476. Moreover, interpreting the term "like product" so narrowly as to include only "precisely identical" products would well "prevent consideration of an industry adversely affected by the imports under investigation." S.Rep. No. 249, 96th Cong., 1st Sess. 90–91 (1979), *reprinted in* 1979 U.S.C.C.A.N. 477. An industry that produces products which directly compete with the imported merchandise, but contain only minor differences from the article under investigation, would be excluded from consideration.

■ The court's determination that the Commission's "like product" determination may include products with minor differences from the imported article as well as precisely identical merchandise is supported by previous determination of this court and the Commission. In *Asociacion Colombiana de Exportadores de Flores v. United States,* 12 CIT 634, 638, 693 F.Supp. 1165 (1988), this court recognized that the Commission's definition of "like product" may encompass a broad interpretation of the term "like product" when it noted that "[i]t is up to [the Commission] to determine objectively what is a minor difference." Every like product determination must be based upon the "unique facts of each case" and "on the particular record at issue." *Id.* at 638, 693 F.Supp. 1165.

The Commission itself has also previously interpreted the term "like" to encompass both "precisely identical" and "like" products. In *Portable Electric Nibblers From Switzerland,* USITC Pub. 1108, Inv. No. 731–TA–35 (Preliminary) (Nov.1980), the Commission defined the domestic like product for imported 14 and 18 gage electric nibblers as all portable electric nibblers. The Commission noted that "[t]he concept of likeness does not require exact identity...." *Id.* at 5.

■ In summary, the court finds that the Commission's interpretation of 19 U.S.C. § 1677(10), that as a matter of law, products "like" the article under investigation may include products with "minor differences in physical characteristics or uses" from the imported article, is reasonable and permissible. The court emphasizes, however, the Commission may neither indiscriminately nor habitually include products with "minor differences in physical characteristics or uses" from the imported articles in its definition of "like product." Determinations by the Commission regarding the scope of the "like product" must, of course, be supported by the evidence. *Torrington,* 14 CIT at 648, 651, 747 F.Supp. 744. Therefore, any finding by the Commission that the like product corresponding to an imported article included products with minor differences in addition to merchandise precisely identical to the article under investigation must be so supported. Similarly, factual determina-

tions by the Commission defining differences which are in fact "minor" must be likewise supported by substantial evidence.

Accordingly, upon remand in this action, any expansion by the Commission upon its determination of the products "like" imported AMLCD FPDs and "like" imported EL FPDs to include products with "minor differences in physical characteristics or uses" from the imported FPDs, and any factual findings delineating "minor differences" must be supported by substantial evidence.

## CONCLUSION

For the reasons provided above, this court holds that the Commission's final determination regarding high information content flat panel displays and subassemblies from Japan was not supported by substantial evidence and not in accordance with law. Accordingly, the Commission's determination is remanded to the Commission. The court's decision is reserved on plaintiffs' challenge to the final determination issued by Commerce.