85 F.3d 1561
 18 ITRD 1353
 HOSIDEN CORPORATION, Hitachi, Ltd., Matsushita Electric
Industrial Corporation, Apple Computer, Inc., International
Business Machines Corporation, COMPAQ Computer Corporation,
Tandy Corporation, Plaintiffs,
and
Sharp Corporation, Plaintiff-Appellee,
v.
ADVANCED DISPLAY MANUFACTURERS OF AMERICA, Defendant-Appellant,
and
Planar Systems, Inc., Plasmaco, Inc., OIS Optical Imaging
Systems, Inc., Cherry Display Products
Corporation, Electro-Plasma Inc.,
Photonics Technology, Inc.,
and Magnascreen
Corporation,
Defendants,
and
Texas Instruments, Incorporated, Defendant,
v.
The UNITED STATES, Defendant-Appellee.
ADVANCED DISPLAY MANUFACTURERS OF AMERICA, Plaintiff-Appellant,
and
Planar Systems, Inc., Plasmaco, Inc., OIS Optical Imaging
Systems, Inc., Cherry Display Products
Corporation, Electro-Plasma Inc.,
Photonics Technology, Inc.,
and Magnascreen
Corporation,
Plaintiffs,
v.
The UNITED STATES, Defendant-Appellee.
 No. 94-1380.
 United States Court of Appeals,
Federal Circuit.
 May 31, 1996.
 
 Paul C. Rosenthal, Collier, Shannon, Rill & Scott, Washington, DC, argued for the plaintiff-appellant.
 Paul R. Bardos, Office of the General Counsel, U.S. International Trade Commission, Washington, DC, argued for the United States, defendant-appellee. With him on the brief were Lyn M. Schlitt, General Counsel, and James A. Toupin, Deputy General Counsel.
 Christopher P. Johnson, Donovan, Leisure, Newton & Irvine, New York City, argued for Sharp Corporation, plaintiff-appellee. With him on the brief were Peter J. Gartland, David S. Versfelt, and Fusae Nara. Of counsel was Christopher K. Tahbaz.
 Before RICH, Circuit Judge, SKELTON, Senior Circuit Judge, and NEWMAN, Circuit Judge.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 In this antidumping duty case, the Advanced Display Manufacturers of America (ADMA) appeals the final decision of the United States Court of International Trade[1] relating to imports of high-information content flat panel displays (HIC FPDs). The International Trade Commission (ITC or Commission) had determined that the appropriate procedure for analyzing the injury to the domestic industry was to cumulate the effect of sales at less than fair value (LTFV) of various electronic forms of HIC FPD, based on the Commission's determination that the domestic industry comprised the producers of all forms of HIC FPDs. The Court of International Trade disagreed, and held that the Commission was required to conduct a separate injury analysis for each electronic form of HIC FPD.
 
 
 2
 We conclude that the Commission acted within its statutory authority in defining the "like product" of the domestic industry as HIC FPD generally, and acted correctly in determining the cumulative effect of sales at LTFV of the various electronic forms of HIC FPD. Thus the Court of International Trade erred in barring the Commission from applying this methodology for its injury determination.
 
 BACKGROUND
 
 3
 On July 18, 1990 ADMA and its member companies Planar Systems, Inc., Plasmaco, Inc., OIS Optical Imaging Systems, Inc., Cherry Display Products Corporation, Electro-Plasma Inc., Photonics Technology, Inc., and Magnascreen Corporation, filed an antidumping duty petition. The petitioners charged that imports from Japan of HIC FPDs and subassemblies were being sold in the United States at less than fair value, and that these sales materially injured an industry in the United States. The International Trade Administration of the Department of Commerce (ITA or Commerce), and the Commission, each duly instituted an antidumping investigation in accordance with its authority.
 
 
 4
 The Commission's Preliminary Determination of Injury: The Commission is responsible for determining the domestic industry that is injured by sales at LTFV. 19 U.S.C. §§ 1673b(a)(1), 1673d(b)(1), 1677(4)(A). The Commission used its standard criteria to define the domestic like product for the imported merchandise, including similarities of physical characteristics, end uses, production processes, and channels of distribution. The Commission defined the domestic "like product" as HIC FPDs and subassemblies thereof, and concluded that there was a "reasonable indication" that the domestic industry producing HIC FPDs was injured by imports from Japan that were sold at LTFV. The Commission issued a preliminary affirmative injury determination. High-Information Content Flat Panel Displays and Subassemblies Thereof From Japan, USITC Pub. 2311, Inv. No. 731-TA-469 (Sept. 1990).
 
 
 5
 Commerce's Determinations of Sales at LTFV: In its preliminary determination Commerce defined the various electronic forms of HIC FPD and subassemblies thereof as a single "class or kind" of merchandise, based on similarities of physical characteristics, customer expectations, end uses, and channels of trade. Commerce found that HIC FPDs were being sold in the United States at LTFV. High Information Content Flat Panel Displays and Subassemblies Thereof From Japan, 56 Fed.Reg. 7008 (Feb. 21, 1991).
 
 
 6
 In its final determination, Commerce found that there were four separate classes or kinds of HIC FPD: active-matrix liquid crystal display, passive-matrix liquid crystal display, gas plasma display, and electroluminescent display. Commerce investigated each of the four kinds separately, and determined that active-matrix and electroluminescent HIC FPDs were being sold in the United States at LTFV. Since no domestic petitioner produced passive-matrix liquid crystal HIC FPDs, Commerce removed this product from the investigation without determining whether it was sold at LTFV. Commerce also removed the gas plasma HIC FPDs from the investigation, finding that the dumping margin was de minimis. Commerce calculated weighted average dumping margins of 7.02% for imports of electroluminescent HIC FPDs and 62.67% for imports of active-matrix HIC FPDs. High Information Content Flat Panel Displays and Display Glass Therefor From Japan, 56 Fed.Reg. 32,376 (July 16, 1991).
 
 
 7
 The Commission's Final Determination of Injury. On return to the Commission for final injury determination, the Commission again determined that the "like product" of the domestic industry was HIC FPDs, including all the various electronic forms of HIC FPD. The Commission applied the statutory definition of "like product," 19 U.S.C. § 1677(10), as "a product which is like, or in the absence of like, most similar in characteristics and uses with, the article subject to an investigation."
 
 
 8
 The Commission found that all HIC FPDs have the same general end use, for they all provide a continuous visible display of text, images, and graphics. The Commission found that all HIC FPDs share similar channels of distribution, for they are generally sold to original equipment manufacturers. They are all manufactured in sterile environments where electrical conductors and other components are built onto glass substrates before the liquid crystal, gas, or electroluminescent material is added. Purchasers explained to the Commission that they generally would consider more than one kind of HIC FPD when purchasing the display. The Commission found that prices of all kinds of HIC FPDs overlapped to a "significant degree." Thus the Commission determined that the like product for the active-matrix and electroluminescent displays was all forms of HIC FPDs. The Commission stated: "Although the parties' submissions and the staff's inquiries have built an extensive record in this final investigation, that record indicates to us that one like product is still appropriate." Certain High-Information Content Flat Panel Displays and Display Glass Therefor From Japan, USITC Pub. 2413, Inv. No. 731-TA-469 at 7 (Aug. 1991).
 
 
 9
 The Commission recognized Commerce's delineation into four kinds of HIC FPD, but explained that the domestic "like product" for injury purposes was not necessarily coextensive with the "class or kind" determination made by Commerce:
 
 
 10
 Although the Commission must accept Commerce's determination as to which merchandise is within the class or kind of merchandise under investigation, the Commission determines what domestic products are like those in the class defined by Commerce. The Commission may find a domestic like product to be broader than the class or kind of imported merchandise described by Commerce, or it may find two or more like products corresponding to one class or kind.
 
 
 11
 Id. at 5 (footnote omitted). The statute and precedent support this position. See, e.g., Sony Corp. v. United States, 13 Ct. Int'l Trade 353, 360, 712 F.Supp. 978, 984 (1989) ("ITC has authority to make 'like product' determinations that are narrower in scope than Commerce's 'class or kind' determination").
 
 
 12
 The Commission found that the domestic industry that produces HIC FPDs was materially injured by the cumulative imports at LTFV of active-matrix and electroluminescent displays, the two kinds that were found by Commerce to be sold at LTFV. Antidumping duties were ordered. High Information Content Flat Panel Displays and Display Glass Therefor From Japan, 56 Fed.Reg. 43,741 (Sept. 4, 1991).
 
 
 13
 The First Appeal to the Court of International Trade. The plaintiff Japanese manufacturers and certain domestic importers brought suit in the Court of International Trade, challenging the antidumping duty orders. They argued, inter alia, that the Commission erred in conducting a combined injury investigation of sales at LTFV of the active-matrix and electroluminescent HIC FPDs. The Court of International Trade agreed, holding that the Commission was required to conduct a separate injury analysis for each of the separate electronic forms of HIC FPD. The Court held that the Commission must separately identify the domestic industry for each form, and must separately assess the injury to that industry caused by each form individually. The court reasoned that to do otherwise would "eviscerate" the holding of Commerce that each electronic form of HIC FPD was a separate "class or kind" of merchandise.
 
 
 14
 Thus the court instructed the Commission to act on remand as follows:
 
 
 15
 the Commission must individually determine the domestic industry--the domestic producers of a like product corresponding to imported AMLCD [active-matrix] FPDs, and whether that domestic industry was injured by reason of imports of AMLCD FPDs alone. Secondly, the Commission must determine the domestic producers of the like product corresponding to EL [electroluminescent] FPDs, and whether that domestic industry was injured by reason of EL FPD importations.
 
 
 16
 Hosiden I, 16 Ct. Int'l Trade at 1097, 810 F.Supp. at 331. Both ADMA and the Commission appealed that ruling to this court. The appeals were dismissed as premature. Hosiden Corp. v. Advanced Display Manufacturers of America, 9 F.3d 977 (Fed.Cir.1993) (Table) (unpublished decision holding that review of the remand order was not appropriate because the order was not a final disposition by the Court of International Trade).
 
 
 17
 The Commission's Actions on Remand. The Commission conducted the separate injury determinations that were ordered by the Court of International Trade, while stating its disagreement with the court's order. The Commission stated:
 
 
 18
 [W]e respectfully disagree with the Court's conclusion that the antidumping statute proscribes cumulating the impact of two or more classes or kinds of merchandise on a domestic industry where, as here, the like product and the domestic industry are one and the same for each class of subject merchandise.
 
 
 19
 Certain High-Information Content Flat Panel Displays and Display Glass Therefor From Japan, USITC Pub. 2610, Inv. No. 731-TA-469 at I-1 n. 4 (Mar. 1993). A commissioner explained that the Commission has "discretion to 'cumulate' the separate classes of merchandise subject to investigation," citing 19 U.S.C. § 1673 and expressing concern for the court's refusal to defer to the Commission's discretionary authority. Id. at III-2-III-3.
 
 
 20
 Applying the methodology ordered by the Court of International Trade, three of the six commissioners continued to "find that there is one like product consisting of all HIC FPDs for each of the two classes or kinds of merchandise that are subject to investigation." Id. at I-3. The other three commissioners found the domestic like product to consist of only the same electronic form as the imported class or kind. Four of the six commissioners found that the imports at LTFV of electroluminescent HIC FPDs, taken alone, caused no material injury to the corresponding domestic industry, defined by three commissioners as only electroluminescent HIC FPDs and by one as all HIC FPDs. The Commission split 3-3 on whether the imports at LTFV of active-matrix HIC FPDs caused material injury to the corresponding domestic industry; this split resulted in an affirmative injury determination for active-matrix HIC FPDs. See 19 U.S.C. § 1677(11) ("If the Commissioners voting on a determination by the Commission, including a determination under section 1675 of this title, are evenly divided as to whether the determination should be affirmative or negative, the Commission shall be deemed to have made an affirmative determination.") However, in June 1993 the sole domestic producer of active-matrix HIC FPDs, Optical Imaging Systems, issued a statement of no interest, whereupon the antidumping duty order on active-matrix HIC FPDs was retroactively revoked. Active Matrix Liquid Crystal High Information Content Flat Panel Displays and Display Glass Therefor From Japan, 58 Fed.Reg. 34,409, 34,414 (June 25, 1993).
 
 
 21
 The Appeal to the Court of International Trade. ADMA argued, on appeal to the Court of International Trade, that the court's instructions to the Commission on remand were incorrect in law. The Court of International Trade disagreed, and affirmed the Commission's remand determination as in accordance with the court's instructions and supported by substantial evidence. Hosiden II, 852 F.Supp. at 1058-59.
 
 
 22
 In Hosiden II the Court of International Trade instructed Commerce to revoke the remaining antidumping duty order within 10 days of the date of the court's judgment. 852 F.Supp. at 1061. This aspect, the subject of a mandamus petition, is treated in our decision today in Appeal No. 94-1490.
 
 
 23
 The Appeal to the Federal Circuit. On appeal to this court ADMA points out that the Commission is charged with defining the domestic industry for like products for the purpose of determination of injury, that the Commission's definition was in accordance with law and precedent, and that a cumulative injury analysis for the several forms of HIC FPDs was within the Commission's discretionary authority. Thus ADMA argues that the Court of International Trade erred in its instructions to the Commission.
 
 
 24
 The United States contends that the Court of International Trade indeed erred in requiring the Commission to make separate injury determinations for each electronic form of HIC FPD, and that deference was owed by the court to the Commission's decision to cumulate the injury of the electronic forms of HIC FPD. The government also states that this appeal is moot and should be dismissed and the decisions of the Court of International Trade vacated.
 
 
 25
 Sharp Corporation as appellee supports the government's view that this appeal is moot but argues that the decisions of Hosiden I and Hosiden II should not be vacated and, if not deemed moot, should be affirmed. Sharp also argues that ADMA does not have standing in this appeal. This court held otherwise on Sharp's motion decided before this appeal proceeded. Hosiden Corp. v. United States, No. 94-1380 (Fed.Cir. Dec. 6, 1994), reconsid'n denied, Jan. 12, 1995. That decision resolved the question of standing.
 
 
 26
 * MOOTNESS
 
 
 27
 We start with the question of whether there remains a case of actual controversy on this appeal. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). In deciding whether an issue is moot, we determine the prospect that a decision on the issue would affect any party, and whether the issue is within the court's discretion. See Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). When it is no longer of concern how a case is decided, there is no actual controversy and no basis for continuing the appeal. See Church of Scientology v. United States, 506 U.S. 9, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992).
 
 
 28
 The government argues that Commerce's revocation of the active-matrix HIC FPD antidumping duty order, based on the withdrawal of Optical Imaging Systems as a complainant, left only one class or kind of merchandise found to be dumped, viz., the electroluminescent HIC FPD. Therefore, according to the government, it is irrelevant whether this court were to hold that the Commission's cumulation of injury were the proper methodology, for there is now only one electronic form of HIC FPD subject to dumping duty. Thus the government argues that even if Hosiden I were incorrectly decided, as the government and ADMA state, there is no further action to be taken on remand, mooting the appeal.
 
 
 29
 ADMA disagrees, pointing out that whether the Court of International Trade properly required the Commission to separately determine the domestic industry and injury for each electronic form of HIC FPD will have an impact on the parties. If the court's requirement was improper, the Commission's determination that the active-matrix and electroluminescent HIC FPDs were together causing material injury could be reinstated, whether or not Optical Imaging Systems remained as a complainant. This methodology would result in the imposition of antidumping duties on electroluminescent HIC FPDs, which otherwise, based on the decision on appeal, do not incur antidumping duties. There may be additional consequences; those mentioned suffice to show that an actual controversy continues to exist.
 
 II
 INJURY DETERMINATION
 
 30
 We turn to whether the Court of International Trade correctly barred the Commission from cumulating the injurious impact of sales at LTFV of the several electronic forms of HIC FPD. Determination of the reasonableness of the Commission's combined injury analysis starts with interpretation of the statute. Matters of statutory interpretation receive plenary review on appeal. Fairchild Indus., Inc. v. United States, 71 F.3d 868, 872 (Fed.Cir.1995). However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron USA Inc. v. Natural Resources Defense Council Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).
 
 
 31
 19 U.S.C. § 1673. Imposition of Antidumping Duties[2]
 
 
 32
 If--
 
 
 33
 (1) the administering authority determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and
 
 
 34
 (2) the Commission determines that--
 
 
 35
 (A) an industry in the United States--
 
 
 36
 (i) is materially injured, or
 
 
 37
 (ii) is threatened with material injury, or
 
 
 38
 (B) the establishment of an industry in the United States is materially retarded,
 
 
 39
 by reason of imports of that merchandise or by reason of sales (or the likelihood of sales) of that merchandise for importation,
 
 
 40
 then there shall be imposed upon such merchandise an antidumping duty, in addition to any other duty imposed, in an amount equal to the amount by which the foreign market value exceeds the United States price for the merchandise....
 
 19 U.S.C. § 1677(4)(A) defines "industry":
 
 41
 (A) The term "industry" means the producers as a whole of a domestic like product, or those producers whose collective output of a domestic like product constitutes a major proportion of the total domestic production of the product.
 
 
 42
 The antidumping statute requires not only that there be sales at LTFV, but also that there be injury to domestic industry. Both the Court of International Trade and this court have long recognized that for injury determinations the "class or kind" and "like product" determinations required by the statute need not be consistent. E.g., Torrington Co. v. United States, 14 Ct. Int'l Trade 648, 650, 747 F.Supp. 744, 748 (1990) ("It is settled law that the ITC's like product determination is separate and distinct from ITA's determination of the class or kind of merchandise."), aff'd, 938 F.2d 1278 (Fed.Cir.1991). Commerce had found five classes of merchandise, while the Commission found six like products--one that corresponded to each of the five Commerce classes and one that broadly corresponded to all five. In affirming the Torrington decision the Federal Circuit observed that the Commission "has the discretionary authority to define the like products that are the subject of an antidumping and countervailing duty investigation." 938 F.2d at 1280.
 
 
 43
 The corollary has also occurred, wherein several "like products" can correspond to a single "class or kind" of merchandise sold at LTFV. E.g., American NTN Bearing Mfg. Corp. v. United States, 14 Ct. Int'l Trade 320, 325 n. 6, 739 F.Supp. 1555, 1560 n. 6 (1990) (citing Certain Valves, Nozzles, and Connectors of Brass from Italy for Use in Fire Protection Systems, USITC Pub. 1649, Inv. No. 731-TA-165 (Final) (Feb. 1985)); Badger-Powhatan, Div. of Figgie Int'l, Inc. v. United States, 9 Ct. Int'l Trade 213, 216, 608 F.Supp. 653, 657 (1985). Commerce's designation of the class or kind of merchandise sold at LTFV does not control the Commission's definition of the industry injured in its sales of like products.
 
 
 44
 In Algoma Steel Corp. v. United States, 12 Ct. Int'l Trade 518, 688 F.Supp. 639 (1988), aff'd, 865 F.2d 240 (Fed.Cir.), cert. denied, 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 590 (1989), the Court of International Trade explained that the division of responsibility between the Commission and Commerce is integral to the statutory scheme. The court stated:
 
 
 45
 This division of labor has been upheld even where it has resulted in decisions which are difficult to reconcile, as when the class of merchandise found by ITA to be sold at LTFV affects several industries, not all of which are found by ITC to be materially injured.... The division of labor cannot be ignored.
 
 
 46
 688 F.Supp. at 644. In affirming Algoma the Federal Circuit stated that the relationship between the Commission and Commerce "should be one for the agencies to resolve between themselves, and not for the courts." 865 F.2d at 241. See also Mitsubishi Elec. Corp. v. United States, 898 F.2d 1577, 1584 (Fed.Cir.1990) ("Under the statutory scheme, the Administration and the Commission have separate and different, although related, duties and responsibilities."); Asociacion Colombiana de Exportadores de Flores v. United States, 12 Ct. Int'l Trade 634, 637 n. 4, 693 F.Supp. 1165, 1168 n. 4 (1988) ("For administrative ease and to avoid complications it would be helpful if the decisions of ITC and ITA were coterminous, but they are separate decisions that ultimately are made on separate bases.")
 
 
 47
 The Commission used the appropriate criteria in determining the domestic industry by defining the like product as including all electronic forms of HIC FPDs. The Commission then reasonably interpreted the statute it administers to mean that the injurious effects of the LTFV imports may be combined in determining the cumulative injury to the corresponding domestic industry.
 
 
 48
 The statute provides direct and straightforward instructions to the Commission for use in determining the effect on domestic industry of imports at LTFV. The statute is broad and comprehensive, requiring consideration of the effect of such imports on prices and on producers:
 
 
 49
 § 1677(7)(B) In making determinations under sections 1671b(a), 1671d(b), 1673b(a), and 1673d(b) of this title, the Commission, in each case--
 
 
 50
 (i) shall consider--
 
 
 51
 (I) the volume of imports of the merchandise which is the subject of the investigation,
 
 
 52
 (II) the effect of imports of that merchandise on prices in the United States for like products, and
 
 
 53
 (III) the impact of imports of such merchandise on domestic producers of like products, but only in the context of production operations within the United States;....
 
 
 54
 19 U.S.C. § 1677(7)(B) (1988).[3] The statute neither requires nor suggests that the Commission conduct a separate injury analysis when the Commission determines that only one domestic industry corresponds to all of the classes or kinds of the goods under investigation.
 
 
 55
 Indeed, cumulation of the effects of sales at LTFV is not a new event in trade cases. In the past, the Commission has made a single injury determination when it found that several classes or kinds of imports corresponded to one like product. For example, in Cyanuric Acid and its Chlorinated Derivatives from Japan, USITC Pub. 1513, Inv. No. 731-TA-136 (Final) at 3-4 (Apr. 1984), the Commission found that a single like product, isocyanurates, corresponded to Commerce's three classes or kinds: cyanuric acid, dichloro isocyanurates, and trichloro isocyanuric acid. The Commission performed a single injury analysis, combining the effects of sales at LTFV of the three classes or kinds, and finding material injury to the domestic isocyanurate industry. As here, this finding did not "eviscerate" Commerce's class or kind distinction, for the ensuing antidumping duty orders reflected the appropriate dumping margin for each class or kind of cyanurate, separately. Cyanuric Acid and Its Chlorinated Derivatives From Japan Used in the Swimming Pool Trade; Antidumping Duty Orders, 49 Fed.Reg. 18,148 (Apr. 27, 1984). See also Certain Flat-Rolled Carbon Steel Products from Brazil, USITC Pub. 1499, Inv. No. 731-TA-123 (Final) at 4 (Mar. 1984) (the Commission found a single like product, carbon steel plate, corresponding to Commerce's two classes or kinds, cut-to-length plate and coiled plate; thus the Commission performed a single injury analysis).
 
 
 56
 The Commission's decision to cumulate the injury of more than one class or kind that corresponds to the same like product accords with the policy behind the cumulation statute. 19 U.S.C. § 1677(7)(G)(i) allows the Commission to "cumulatively assess the volume and price effects of imports of the subject merchandise from all countries" with respect to which either antidumping or countervailing duty petitions were filed or initiated on the same day, "if such imports compete with each other and with domestic like products in the United States market." As stated in USX Corp. v. United States, 12 Ct. Int'l Trade 205, 219, 682 F.Supp. 60, 73 (1988), the "purpose of cumulation is to avoid a negative injury determination when unfairly traded imports from various sources together injure an industry." In Bingham & Taylor Div., Virginia Indus., Inc. v. United States, 815 F.2d 1482, 1485 (Fed.Cir.1987) this court interpreted the legislative history of the predecessor of 19 U.S.C. § 1677(7)(G)(i) to require cumulation of the effects of both dumped and subsidized imports. The court quoted H.R.Rep. No. 725, 98th Cong., 2d Sess. 37 (1984), reprinted in 1984 U.S.C.C.A.N. 4910, 5164, which stated the purpose of preventing "material injury which comes about by virtue of several unfair acts or practices."
 
 
 57
 The Commission is not prohibited from reflecting the commercial reality of cumulative injury, for "importers take the industry as they find it." Iwatsu Elec. Co. v. United States, 15 Ct. Int'l Trade 44, 57, 758 F.Supp. 1506, 1518 (1991). The Commission may cumulate the effects of dumped imports from different countries or dumped and subsidized imports from the same or different countries. In determining whether sales at LTFV caused material injury to domestic industry, the Commission is not restricted by artificial distinctions that may distort the true picture of injury to the domestic industry.
 
 
 58
 Cumulation of injury caused by multiple classes or kinds of imports, when those imports compete with the same domestic like product, appropriately measures the nature of the injury to the domestic industry. The Court of International Trade erred in holding that the Commission was barred from cumulating the injurious effects of sales at LTFV of more than one electronic form of HIC FPD.
 
 SUMMARY
 
 59
 The Commission reasonably interpreted and applied the statute in cumulating the effects of sales of HIC FPDs at LTFV. The Court of International Trade erred in prohibiting the Commission from conducting a combined injury analysis where, as here, the Commission found that the same domestic like product corresponded to the several classes or kinds of merchandise under investigation. We vacate the decision of the Court of International Trade, and remand for appropriate further proceedings.
 
 
 60
 VACATED AND REMANDED.
 
 
 
 [1]
 Hosiden Corp. v. United States, 852 F.Supp. 1050 (Ct. Int'l Trade 1994) (Hosiden II ); Hosiden Corp. v. United States, 16 Ct. Int'l Trade 1088, 810 F.Supp. 322 (1992) (Hosiden I )
 
 
 [2]
 This statute is the antidumping law in effect in 1988. The law was amended by the Uruguay Round Agreements Act, Pub.L. No. 103-465, tit. II, 108 Stat. 4809 (1994); the changes in § 1673 relevant to this case relate to terminology, e.g., "normal value" replaced "foreign market value," and "export price (or the constructed export price)" replaced "United States price."
 
 
 [3]
 The Uruguay Round Agreements Act substituted "domestic like product" for "like product" and "subject merchandise" for "merchandise which is the subject of the investigation."