**HOSIDEN CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 91–10–00720.**
**Slip Op. 94–60.**

United States Court of
International Trade.

April 14, 1994.

Donovan Leisure Newton & Irvine (Peter J. Gartland, David S. Versfelt, Christopher P. Johnson, and Christopher K. Tahbaz), New York City, for plaintiff Sharp Corp.

Graham & James (Lawrence R. Walders), Washington, DC, for plaintiffs Hitachi, Ltd.; Hosiden Corp.; Matsushita Elec. Industrial Co., Ltd.; NEC Corp.; Seiko Epson Corp.; and Toshiba Corp.

Baker & McKenzie (Thomas P. Ondeck and Kevin M. O'Brien), Washington, DC, for plaintiff Apple Computer, Inc.

O'Melveny & Myers (Kermit W. Almstedt, Peggy A. Clarke, Greta L.H. Lichtenbaum, and Craig L. McKee), Washington, DC, for plaintiff International Business Machines Corp.

Collier, Shannon, Rill & Scott (Paul C. Rosenthal, Robin H. Gilbert), Washington, DC, for plaintiff Advanced Display Mfrs. of America.

Vinson & Elkins L.L.P. (Theodore W. Kassinger, Charles D. Tetrault, and Rosemary E. Gwynn), Washington, DC, for plaintiff Compaq Computer Corp.

Pennie & Edmonds (Arthur Wineburg and Marcia H. Sundeen), Washington, DC, for plaintiff Tandy Corp.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (A. David Lafer); Marguerite E. Trossevin, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, of counsel, for defendant.

Lyn M. Schlitt, General Counsel; James A. Toupin, Asst. Gen. Counsel, U.S. Intern. Trade Com'n (Paul R. Bardos and Rachele Valente), Washington, DC, for defendant.

Collier, Shannon, Rill & Scott (Paul C. Rosenthal, Robin H. Gilbert), Washington, DC, for defendant-intervenor Advanced Display Mfrs. of America.

Adduci, Mastriani, Schaumberg & Schill (Louis S. Mastriani, Anri Suzuki, and Gregory C. Anthes), Washington, DC, for plaintiff Hosiden Corp.

Jones, Day, Reavis & Pogue (John E. Benedict, David G. Schryver, and Thomas F. Cullen, Jr.), Washington, DC, for defendant-intervenor Texas Instruments, Inc.

## MEMORANDUM OPINION

GOLDBERG, Judge.

This matter is before the court for review of the final remand determination by the U.S. International Trade Commission ("ITC" or "Commission") issued pursuant to this court's memorandum opinion and order dated December 29, 1992 (16 CIT ——, 810 F.Supp. 322 (1992)). The ITC issued its remand determination on March 8, 1993. *Certain High–Information Content Flat Panel Displays and Display Glass Therefor From Japan,* Inv. No. 731–TA–469 (Final) (Remand), USITC Pub. No. 2610 (Mar. 1993) (*"Remand Determination"*).

Upon remand, the Commission determined that an industry in the United States was not materially injured by reason of imports from Japan of electroluminescent ("EL") high-information content flat panel displays ("HIC FPDs" or "displays"). Plaintiff Advanced Display Manufacturers of America ("ADMA") has filed a motion for judgment on the agency record challenging the Commission's negative remand determination, alleging it is not based on substantial evidence in the administrative record, and not in accordance with law.

The court will first examine that portion of the Commission's *Remand Determination* concerning EL displays, and conclude that in this regard the *Remand Determination* is in accordance with law and is supported by substantial evidence. The court therefore denies ADMA's motion and affirms this portion of the *Remand Determination.*

After the ITC filed its *Remand Determination,* the U.S. Department of Commerce ("Commerce") revoked the antidumping duty order on active matrix liquid crystal display ("AMLCD") HIC FPDs from Japan. Commerce's revocation of the antidumping duty order thus renders moot all proceedings concerning AMLCDs. As a result, the court dismisses all complaints in this action pertaining to AMLCDs from Japan. The court further concludes that Commerce's revocation does not require this court to vacate its *Memorandum Opinion and Order* of December 29, 1992, which instructed the ITC to reconsider its determination.

## BACKGROUND

This is the latest chapter in the saga of this antidumping investigation of high-information content flat panel displays and display glass therefor from Japan. The proceedings relevant to the present action are summarized and highlighted as follows.[1]

On July 16, 1991, Commerce published its final affirmative determination finding four separate classes or kinds of imported merchandise. Two of these classes, active-matrix liquid crystal displays ("AMLCDs") and electroluminescent HIC FPDs ("ELs" or "EL displays"), were found to be sold at less than fair value. *High Information Content Flat Panel Displays and Display Glass Therefor From Japan,* 56 Fed.Reg. 32,376 (July 16, 1991). Commerce established a weighted average margin of 62.67 percent for all imports of AMLCDs and 7.02 percent for all imports of ELs. *Id.,* 56 Fed.Reg. at 32,401.

The ITC reached a final affirmative injury determination in this investigation on August 26, 1991. *Certain High–Information Content Flat Panel Displays and Display Glass Therefor From Japan,* Inv. No. 731–TA–469 (Final), USITC Pub. No. 2413 (Aug. 1991) (*"ITC Final Determination"*). The ITC found that all types of HIC FPDs comprised a single domestic like product, which corresponded to more than one class or kind of imported merchandise. *ITC Final Determination* at 7. The ITC determined that the domestic industry which produced the like product had been materially injured by less than fair value ("LTFV") imports of two classes or kinds of merchandise, EL displays and AMLCDs. *ITC Final Determination* at 27. In reaching this determination, the ITC conducted a single material injury analysis that considered the aggregate effects of the two classes or kinds of merchandise on the domestic industry that produced the like product. *ITC Final Determination* at 23–27. Commerce then published antidumping duty orders on imports of AMLCDs and ELs from

1. For a more detailed description of the procedural history of this case, see *Hosiden Corp. v. United States,* 16 CIT ——, ——, 810 F.Supp. 322, 325–27 (1992).

Japan. *High Information Content Flat Panel Displays and Display Glass Therefor from Japan,* 56 Fed.Reg. 43,741, 43,742 (Sept. 4, 1991). Plaintiffs initiated actions challenging the determinations of both Commerce and the Commission.

On December 29, 1992, this court issued a memorandum opinion and order, in which it remanded this matter to the ITC for reconsideration. *Hosiden Corp. v. United States,* 16 CIT ——, 810 F.Supp. 322 (1992) *("Hosiden I")*.[2] The court instructed the ITC to make two separate material injury determinations for domestic producers of the like product corresponding to each class or kind of imported merchandise found by Commerce to be sold at less than fair value, i.e. AMLCDs and EL HIC FPDs. *Hosiden I,* 810 F.Supp. at 331.[3]

On March 8, 1993, the ITC submitted its *Remand Determination* to the court. Four of the six commissioners found that imports of EL displays from Japan had caused no material injury to a domestic industry. *Remand Determination* at II–1, VI–1. ADMA now challenges that negative determination concerning imports of EL displays via its motion for judgment upon the agency record.

The ITC's *Remand Determination* also found by a 3–3 vote that imports of AMLCDs had caused material injury to an industry in the United States. *Remand Determination* at I–1, II–1. Commerce, however, announced on June 25, 1993, its final results of a changed circumstances administrative review, and revoked the antidumping duty order on AMLCDs. *Active Matrix Liquid Crystal High Information Content Flat Panel Displays and Display Glass Therefor From Japan,* 58 Fed.Reg. 34,409, 34,414 (June 25, 1993). The period for appealing Commerce's revocation expired without any appeal being filed.

**2.** At the time the court issued its order of remand, the court reserved judgment on the determinations made by Commerce. *Hosiden I,* 810 F.Supp. at 325.

**3.** On February 1, 1993 and March 1, 1993, ADMA and the ITC respectively filed notices of appeal with the Court of Appeals for the Federal

## DISCUSSION

### A. ITC's Remand Determination Is In Accordance With Law

ADMA challenges the ITC's negative determination regarding EL displays as not being in accordance with law. ADMA does not contend that the ITC failed to follow the court's remand instructions. Rather, ADMA asserts that the ITC's determination is contrary to law because it was based on the allegedly legally erroneous remand instructions handed down by this court. *Memorandum of Advanced Display Manufacturers Of America, Et Al. In Support Of Motion For Judgment Upon An Agency Record ("ADMA Brief")* at 10. "The Court's failure to apply a deferential standard of review to the Commission's original findings, followed by the Court imposing its own erroneous framework on the Commission's analysis, was contrary to law and accordingly caused the Commission's remand results to be contrary to law." *Id.* The Commission responded:

> Whether or not this Court's December 29, 1992, order was in error, however, the Commission was required to comply with that order and did so in its determination on remand.

*Memorandum of Defendant U.S. International Trade Commission In Response To Private Parties' Comments Concerning The Commission's Remand Determination ("ITC Brief")* at 15.

Rather than challenge the ITC's *Remand Determination,* ADMA challenges the court's underlying remand order and opinion in *Hosiden I.* ADMA essentially complains that this court's remand order resulted in an unlawful usurpation of the Commission's discretionary authority. ADMA's disagreement with the court's interpretation of the law set forth in *Hosiden I,* however, is extraneous to the court's present determination of whether the Commission's *Remand Determination* is

Circuit. On July 13, 1993, the Federal Circuit dismissed these two appeals, noting that "[r]eview of the issues in the remand order is not simply appropriate at this time." *Hosiden v. United States,* Nos. 93–1224, 93–1269, 1993 WL 452601, at *6, 1993 U.S.App. LEXIS 19060, at *20 (Fed.Cir. July 13, 1993).

in accordance with law.[4] At this point in the proceedings, the court is concerned solely with whether the Commission complied with the court's remand instructions. The court finds that the ITC's *Remand Determination* is in compliance with the *Hosiden I* remand order and opinion, and is in accordance with law.

■ As to ADMA's assertion that this court failed to apply a deferential standard of review to the Commission's *Final Determination*, the court disagrees. As discussed in greater detail in *Hosiden I,* this court fulfilled its statutory duty to assess whether the ITC's original *Final Determination* was "in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). The court respectfully considered the views of the Commissioners expressed in the ITC's *Final Determination.* Deference, however, does not compel a relinquishment of the court's responsibility to conduct meaningful judicial review. *Borlem S.A.–Empreedimentos Industriais v. United States,* 8 Fed.Cir. (T) 164, 168, 913 F.2d 933, 937 (1990). Furthermore, the "'traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress.'" *Serampore Indus. Pvt. Ltd. v. U.S. Dep't of Commerce,* 11 CIT 866, 869, 675 F.Supp. 1354, 1357 (1987) (quoting *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986)).

In *Hosiden I,* the court found that the ITC's statutory interpretation was not in accordance with the plain language of the statute. *Hosiden I,* 810 F.Supp. at 328. Title 19 of the United States Code, § 1673 (1988), provides that antidumping duties shall be imposed if:

(1) the administering authority determines that *a class or kind* of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and

(2) the Commission determines that—

  (A) an industry in the United States—

    (i) is materially injured, or

    (ii) is threatened with material injury, or

  (B) "the establishment of an industry in the United States is materially retarded,

by reason of imports of *that merchandise* or by reason of sales (or the likelihood of sales) of *that merchandise....*"

19 U.S.C. § 1673 (1988) (emphasis added). This statute clearly refers to "a class or kind of foreign merchandise" as "that merchandise." The modifier "that" specifically limits the Commission's comparisons to those particular imports of "a class or kind" found by Commerce to have been dumped. The statute thus envisions a separate ITC determination for each separate class or kind of merchandise that Commerce determines is being sold in the United States at less than fair value.

The court also acknowledged the established caselaw that supports the Commission's authority to make its own like product determinations. *Hosiden I,* 810 F.Supp. at 329 (citing *Torrington Co. v. United States,* 14 CIT 648, 747 F.Supp. 744 (1990), *aff'd,* 9 Fed.Cir. (T) 101, 938 F.2d 1278 (1991)). *Hosiden I* does not conflict with prior decisions of this court that upheld the Commission's right to find multiple like products within each class or kind of article defined by Commerce. *Id.* (citing *Sony Corp. of America v. United States,* 13 CIT 353, 712 F.Supp. 978 (1989); *American NTN Bearing Mfg. Corp. v. United States,* 14 CIT 320, 739 F.Supp. 1555 (1990)).

■ Furthermore, *Hosiden I* does not preclude the Commission from cumulating the effects of the different classes or kinds of merchandise identified by Commerce. 19 U.S.C. § 1677(7)(C)(iv) clearly authorizes the ITC to cumulate the volume and effect of dumped imports subject to investigation. *Cf. Chaparral Steel Co. v. United States,* 8 Fed. Cir. (T) 101, 108, 901 F.2d 1097, 1103 (1990). This, however, is different from cumulating multiple classes or kinds of merchandise identified by Commerce. As Commissioner

---

4. Indeed, several Commissioners expressed their disagreement or concern with the court's remand instructions in *Hosiden I,* but nevertheless submitted their views for the *Remand Determination* in order to comply with the court's instructions.

Brunsdale noted, *Hosiden I* recognized that under the statutory framework, when Commerce finds multiple classes or kinds of merchandise, the Commission is to make multiple determinations. *Remand Determination* at IV–9. Such a finding does not require the Commission to find multiple like products or multiple domestic industries; it does, however, require multiple determinations. *Id.* Rather than define a single like product corresponding to cumulated classes or kinds of merchandise, the Commission may choose to define a single like product that corresponds to each class or kind of merchandise determined to exist by Commerce. In this scenario, the Commission would then make multiple comparisons of the single like product against each class or kind of merchandise. Clearly, this analytical framework does not eviscerate the Commission's authority to cumulate, as provided by 19 U.S.C. § 1677(7)(C)(iv).

As noted in *Hosiden I,* cumulation of two or more classes or kinds of articles increases the diversity of merchandise for which the Commission seeks to find a "like product." *Hosiden I,* 810 F.Supp. at 330. In certain situations, the totality of characteristics of cumulated classes or kinds of merchandise would not differ significantly from the characteristics of each class or kind viewed separately. *Id.* However, in other cases, the cumulation of multiple classes or kinds of merchandise may very well result in an expanded definition of "like product;" correspondingly, the expanded definition of the domestic industry would then lead to a skewed causation determination. *Id.* Indeed, it is a result such as this which is not "in accordance with law." 19 U.S.C. § 1516a(b)(1) (1988). In sum, then, a plain reading of the specific language of 19 U.S.C. § 1673 indicates that the Commission is required to make separate material injury determinations corresponding to each class or kind of merchandise found by Commerce to have been sold in the United States at less than fair value.

B. *ITC's Remand Determination Is Supported By Substantial Evidence*

ADMA argues that the Commission's negative EL determination is not based on substantial evidence. More specifically, ADMA challenges Commissioner Nuzum's remand determination as unsupported by substantial evidence in the record. Commissioner Nuzum joined Vice Chairman Watson and Commissioners Brunsdale and Crawford in finding that imports of EL displays from Japan did not cause material injury or a threat of material injury to a domestic industry. ADMA ignores the findings of the three other commissioners who voted in favor of the negative injury determination, and focuses its arguments on the findings of Commissioner Nuzum.

■ In support of its argument that Commissioner Nuzum's findings are not supported by substantial evidence, ADMA offers two general arguments. First, ADMA contrasts Commissioner Nuzum's findings to the contrary findings of Chairman Newquist and Commissioner Rohr. *ADMA Brief* at 5–7. Merely highlighting the contrary views expressed by a minority of Commissioners, however, is an insufficient basis for demonstrating that the views of the majority of Commissioners are not supported by substantial evidence. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (quoted in *Matsushita Elec. Ind. Co. v. United States,* 3 Fed.Cir. (T) 44, 51, 750 F.2d 927, 933 (1984)).

■ ADMA also generally asserts that Commissioner Nuzum "appears to have ignored" certain evidence in the administrative record in making her findings. *ADMA Brief* at 5. ADMA's assertions are unfounded. All of the Commissioners, including Commissioner Nuzum, are presumed to have considered all of the evidence in the administrative record in reaching their determinations. *Metallverken Nederland B.V. v. United States,* 13 CIT 1013, 1021, 728 F.Supp. 730, 736 (1989). ADMA appears to confuse the issue of whether Commissioner Nuzum *considered* the information, with whether she *discussed* that information. In order to de-

termine whether the views of Commissioner Nuzum and the majority of Commissioners are supported by substantial evidence, the court will review the ITC majority's determination concerning the subject EL imports, focusing on the volume of EL imports, the price effects of EL imports, and the impact of EL imports on the domestic industry.[5]

### 1. *Volume*

■ A majority of the Commissioners found that the volume of EL imports from Japan decreased over the period of investigation ("POI"), both in absolute terms and relative to domestic consumption. *Remand Determination* at II–11, VI–1 to VI–2. The majority concluded that they "[did] not find the volume or any increase in volume of subject imports to be significant." *Id.* at II–12. Commissioner Nuzum specifically concluded that:

> Given the small size of the market accounted for by subject EL imports [and] the overall decrease in the volume of these imports in absolute terms and relative to domestic consumption and production, ... I cannot say that I find the volume of imports of EL FPDs to be significant.

*Remand Determination* at VI–2 to VI–3. ADMA argues that the "enormous significance" of the volume of subject EL imports, relative to U.S. producers' shipments of HIC FPDs, demonstrates the unreasonableness of Commissioner Nuzum's finding that the volume of EL imports was insignificant. *ADMA Brief* at 5–6. ADMA's argument is unfounded.

The record clearly indicates that the subject EL imports accounted for only a small share of domestic consumption of HIC FPDs. In absolute unit volume terms, the quantity of EL display imports from Japan was lower at the end of the POI, i.e. [     ] units in 1990, than at the beginning of the POI, i.e. [     ] units in 1988.■ *Staff Final Report to the Commission on Investigation No. 731–TA–469* (Final) (Aug. 5, 1991) at A–133 (Table 35) ("*Staff Report*"). In relative market share terms, the quantity of U.S. shipments of Japanese EL displays accounted for only [     ] percent of the total U.S. market for EL displays in 1990, down from [     ] percent in 1988. *Staff Report* at A–140 (Table 38). Similarly, the U.S. market share of Japanese EL displays, measured by value, decreased from [     ] percent in 1988 to [     ] percent in 1990; this represents a decrease over the POI of nearly [     ] percent. *See id.* The insignificance of the volume of EL display imports from Japan is further highlighted when compared with overall U.S. consumption of all HIC FPDs. EL display imports from Japan represented approximately [     ] percent of all HIC FPDs consumed in the United States during the POI.[6]

In sum, the record indicates that the volume of imports of EL displays from Japan decreased over the POI, represented less than [     ] percent of the domestic EL display market by 1990, and accounted for a mere [     ] percent of total HIC FPD consumption in the United States during the POI. The court thus finds that the ITC's determination that the volume of EL imports was not significant is supported by substantial evidence in the record.

### 2. *Price Effects*

■ A majority of the Commission found that EL imports did not cause significant price suppression. *Remand Determination*

---

**5.** 19 U.S.C. § 1677(7)(B)(i) provides that the Commission shall consider the volume of subject imports, the effect of subject imports on prices in the U.S. for like products, and the impact of such imports on the domestic producers of like products. 19 U.S.C. § 1677(7)(B)(ii) further provides that the Commission "may consider such other economic factors as are relevant to the determination regarding whether there is material injury by reason of imports."

Commissioner Nuzum joined Chairman Newquist and Commissioner Rohr in expressing the majority view on the issues of like product, do-

mestic industry, and condition of the industry. *Remand Determination* at I–3 to I–15, VI–1. ADMA does not challenge these aspects of Commissioner Nuzum's EL determination.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**6.** Apparent domestic consumption of all HIC FPDs was [     ] *Staff Report* at A–137 (Table 37). Imports of EL displays from Japan amounted to [     ] *Staff Report* at A–133 (Table 35).

at II–14, VI–4. Commissioner Nuzum specifically noted that, given the limited amount of price data on the FPD industry and market, she was "especially careful to closely examine the complete record for other evidence of a causal link between subject EL imports and the condition of the domestic industry." *Id.* at VI–4.

The court finds that the majority's finding regarding price effects is supported by substantial evidence. The record indicates that pricing data was sparse and of limited usefulness in part because different models of EL displays tend to be customized. *Staff Report* at A–173. Despite the serious difficulties in making price comparisons, the ITC did conduct price comparisons for two types of EL displays, i.e. 640 × 200 EL displays and 640 × 400 EL displays, and discovered both underselling and overselling by importers of the subject merchandise.[7] *Staff Report* at A–179. The limited data is thus inconclusive of any pattern of underselling by foreign producers.

In sum, viewing the limited pricing data available in light of the overall record, and accounting for instances of overselling by imports and the fluctuating and rising price trends, the majority of Commissioners, including Commissioner Nuzum, reasonably concluded that the subject EL imports did not have significant price effects. The statutory standard of significant price undercutting is not met when the ITC finds a mixed pattern of underselling and overselling. *Copperweld Corp. v. United States,* 12 CIT 148, 162, 682 F.Supp. 552, 566 (1988). The court finds that the record reveals no pattern of underselling by Japanese EL display producers, and further finds a lack of evidence supporting ADMA's allegation of price suppression or depression.

### 3. *Impact on the Domestic Industry*

■ A majority of Commissioners also found that Japanese imports of EL displays

did not have an impact on the condition of the domestic industry sufficient to merit an affirmative material injury determination. *Remand Determination* at II–14, VI–6.

Commissioner Nuzum noted that, although the record contained evidence of one sale being lost to subject imports, that lost sale had little more than a *de minimis* effect on the domestic industry. *Id.* at VI–5. Commissioner Nuzum emphasized that, when compared to the trends for domestic producers' shipments and for shipments of certain other imports, the subject EL imports had only a very minor, stable, presence in the domestic market. *Id.* Commissioner Nuzum thus concluded that insufficient evidence existed demonstrating a causal link between the subject EL imports and the condition of the domestic industry such that an affirmative injury determination was unwarranted. *Remand Determination* at VI–6.

ADMA contends that Commissioner Nuzum ignored "numerous" other examples of lost sales and lost revenues contained in the record. *ADMA Brief* at 6. All but one of these examples, however, amount to ADMA allegations which were never confirmed by the ITC. *Staff Report* at A–182 to A–195. Furthermore, the lone confirmed lost sale involved no more than [ ] units for which the domestic price would have been [ ] per unit. *Staff Report* at A–182 to A–183. The maximum loss to the domestic industry would have equaled [ ] or [ ] percent of the total value of domestic industry shipments in 1989.[8] The court finds that Commissioner Nuzum's characterization of this lost sale as *de minimis* was reasonable, in light of the amount of potential revenue involved and the lack of any other confirmed lost sales.

Based on the foregoing analysis, the court finds that the ITC's *Remand Determination* regarding EL displays from Japan is in accordance with law, and that the majority's

---

7. With regard to 640 × 200 EL displays, prices for domestic displays [ ] over time, while prices for displays from Japan [ ]. *Staff Report* at A–179, A–180 (Tables 44 and 45).

   With regard to 640 × 400 EL displays, prices of both domestic and Japanese displays [ ] during the period of investigation. *Id.*

8. Total 1989 domestic industry shipments amounted to [ ]. *Staff Report* at A–78 (Table 12).

determination is supported by substantial evidence. Thus, the court affirms the ITC's determination that a domestic industry was not materially injured or threatened with material injury by reason of the subject EL imports.

### C. *Effect of Revocation of AMLCD Antidumping Duty Order On Hosiden I*

■ Commerce revoked the antidumping duty order covering AMLCDs, effective June 25, 1993. *Active Matrix Liquid Crystal High Information Content Flat Panel Displays and Display Glass Therefor From Japan*, 58 Fed.Reg. 34,409, 34,414 (June 25, 1993). The period for appealing Commerce's revocation expired without any appeal being filed.

Plaintiffs had previously challenged the Commission's final affirmative determination with respect to AMLCDs because that determination led to the imposition of an antidumping duty order by Commerce on the importation of AMLCDs. Plaintiff Sharp states that "[i]n light of Commerce's unchallenged determination to revoke the antidumping duty order on AMLCDs from Japan, there is no longer a case or controversy with regard to that order, and any challenges previously addressed to that order are now moot." *Submission Of Plaintiff Sharp Corporation Addressed To Remand Determination Of The United States International Trade Commission* at 2.

The Commission agrees with plaintiff Sharp's statement that Commerce's revocation has rendered moot the proceedings concerning AMLCDs. The ITC, however, further argues that:

> This Court should not only dismiss those portions of plaintiffs' complaints relating to AMLCDs, but should also vacate the Court's memorandum opinion and order of December 29, 1992, except insofar as the order instructs the Commission to evaluate subject imports of EL displays.

*ITC Brief* at 8. The ITC contends that the basis for the court's decision was the existence of two classes or kinds of imported merchandise found to be sold at less than fair value. Given that Commerce revoked the antidumping duty order on AMLCDs, only one class or kind of dumped merchandise remains under investigation, i.e. EL displays. It is impossible to consider the combined effects of multiple classes or kinds of merchandise when there is only one class or kind of merchandise under investigation. Therefore, according to the ITC, "any case or controversy as to whether the Commission may consider the combined effects of two classes or kinds of dumped merchandise on a domestic industry is ended." *Id.*

■ The court notes that Article III courts "'lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.'" *PPG Indus., Inc. v. United States,* 11 CIT 303, 306, 660 F.Supp. 965, 968 (1987) (quoting *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 70, 104 S.Ct. 373, 374–75, 78 L.Ed.2d 58 (1983)). A revocation determination by Commerce which is not timely challenged voids the underlying antidumping duty order, and renders moot any pending challenges to such an order. *Asahi Chem. Indus. Co. v. United States,* 13 CIT 987, 992, 727 F.Supp. 625, 629 (1989). Because Commerce has revoked the antidumping duty order for AMLCDs, issues pertaining to AMLCDs in this proceeding are now moot and need not be addressed in this opinion. Thus, the court dismisses all pending challenges concerning AMLCDs.

The court, however, disagrees with the Commission's argument that Commerce's revocation also requires the court to vacate its *Hosiden I* decision. The sequence of events in this case demonstrates that vacatur of the *Hosiden I* decision and accompanying remand order is inappropriate. This court issued its Memorandum Opinion and Order in *Hosiden I* on December 29, 1992, instructing the ITC to conduct separate injury analyses for two classes or kinds of merchandise: EL displays and AMLCDs. On March 8, 1993, in response to the *Hosiden I* decision and remand order, the Commission issued its *Remand Determination.* On June 25, 1993, Commerce published its final determination to revoke the antidumping duty order on AMLCDs. Having already submitted its *Remand Determination* in response to this court's order, the ITC now asks the court to

perform a legal sleight of hand by vacating the very order upon which that *Remand Determination* rests. The ITC essentially asks this court to vacate an order with which it has already complied, as well as the decision that guided the Commission's own disposition of the EL material injury investigation that is presently before the court.

The ITC argues that "if the Commission had known about Commerce's decision to revoke, it would never have considered imported AMLCDs as being subject to its final determination at all." *ITC Brief* at 14. The court refuses to speculate as to what the Commission might have done had the Commission considered Commerce's revocation decision. The fact remains that the Commission's *Remand Determination* was submitted to the court before Commerce revoked the antidumping duty order on AMLCDs.

The Commission errs in asserting that Commerce's revocation has rendered the entire proceeding governed by *Hosiden I* moot. The *Hosiden I* decision is still very much a "live" case because the portion of the Commission's *Remand Determination* that explicitly addresses the pending EL order is the direct result of the explicit language of the court's *Hosiden I* decision. There is no way to separate the pending antidumping order on EL displays from the *Hosiden I* decision. The court finds no reason to vacate the order upon which the *Remand Determination* rests.

In support of its argument that the court must vacate *Hosiden I* for mootness, the Commission cites several cases, i.e. *Canadian Meat Council v. United States,* 12 CIT 108, 680 F.Supp. 390 (1988); *Babcock & Wilcox Co. v. United States,* 4 CIT 3 (1982); *Associated Dry Goods Corp. v. United States,* 3 CIT 1, 533 F.Supp. 1343 (1982), *vacated,* 69 C.C.P.A. 169, 682 F.2d 212 (1982). *ITC Brief* at 10–12. The present case is

clearly distinguishable from the cases cited by the ITC in one significant aspect; specifically, in contrast to the cases cited by the government, the Commission has already acted in response to, and fully complied with, this court's remand instructions in *Hosiden I*.[9]

■■■ The Commission also relies upon *United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), in support of its request for vacatur of *Hosiden I*. *ITC Brief* at 8–9. Vacatur is warranted in order to "prevent a judgment, unreviewable because of mootness, from spawning any legal consequences." *Munsingwear,* 340 U.S. at 41, 71 S.Ct. at 107. As in *Babcock & Wilcox,* however, no final determination on the merits has yet been rendered in this case. *See Babcock & Wilcox,* 4 CIT at 5. The *Hosiden I* remand order and opinion did not compel a particular result on remand, nor did it unquestionably terminate the action before this court. Thus, *Hosiden I* is not a final judgment on the merits with associated *res judicata* effect. Indeed, the Federal Circuit recognized as much when it denied the petitions of ADMA and the ITC for appeal of the *Hosiden I* remand order. *Hosiden Corp. v. United States,* Nos. 93–1224, 93–1269, 1993 WL 452601, at *6, 1993 U.S.App. LEXIS 19060, at *20 (Fed.Cir. July 13, 1993) ("Review of the issues in the remand order is not simply appropriate at this time.").

Though the ITC may disagree with the *Hosiden I* decision, the fact remains that the ITC's *Remand Determination* has already been issued; the very existence of the *Remand Determination* exposes the logical fallacy undermining the ITC's argument for vacatur. The case before the court has not become entirely moot. The *Hosiden I* decision is a necessary underpinning to the ITC's *Remand Determination,* which is presently

---

9. In *Canadian Meat Council,* at the time that the court's review of Commerce's determination became moot, Commerce had not yet complied with the terms of the remand order. The court therefore vacated the remand order, recognizing that "[t]he remand ordered in [the court's prior review of Commerce's determination] is not necessary." *Canadian Meat Council,* 12 CIT at 112, 680 F.Supp. at 393. In *Babcock & Wilcox,* the remand order vacated by the court was similarly

an order with which the Commission had yet to comply. *Babcock & Wilcox,* 4 CIT at 4–7 (filing of a new antidumping petition pursuant to a stipulated agreement between the parties rendered the pending remand order before the Commission superfluous). The contrast to the present case is clear; having already issued its *Remand Determination,* the ITC's mootness argument is thus undermined.

before the court for review. The government's motion for vacatur is therefore denied.

## CONCLUSION

For the reasons set forth above, the court affirms the ITC's *Remand Determination* that a domestic industry was not materially injured or threatened with material injury by reason of subject EL imports. All issues pertaining to AMLCDs have been rendered moot by Commerce's revocation of the underlying antidumping duty order; therefore, the court dismisses all pending challenges concerning AMLCDs. Judgment will be entered accordingly.

## *ORDER*

This case having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein; now, therefore, in accordance with said decision and upon consideration of *Certain High–Information Content Flat Panel Displays and Display Glass Therefor From Japan,* Inv. No. 731–TA–469 (Final) (Remand), USITC Pub. No. 2610 (Mar. 1993), issued by the U.S. International Trade Commission ("ITC") on March 8, 1993, and upon consideration of the August 12, 1993 motion of Advanced Display Manufacturers of America ("ADMA") for judgment upon an agency record, it is hereby

**ORDERED** that the ITC's final negative injury determination on remand with regard to electroluminescent ("EL") high information content flat panel displays and display glass therefor from Japan, is sustained; it is further

**ORDERED** that ADMA's motion is denied; it is further

**ORDERED** that, based upon the ITC's determination on remand, the United States Department of Commerce ("Commerce") shall revoke the antidumping duty order on EL high information content flat panel displays and display glass therefor from Japan, said order having been published at 56 Fed. Reg. 43,741, 43,742 (Sept. 4, 1991), within 10 days of the date of this Judgment; it is further

**ORDERED** that all challenges raised in this case pertaining to the antidumping duty order on active matrix liquid crystal high information content flat panel displays and display glass therefor from Japan, are dismissed as moot by reason of Commerce's uncontested determination in *Active Matrix Liquid Crystal High Information Content Flat Panel Displays and Display Glass Therefor From Japan,* 58 Fed.Reg. 34,409 (June 25, 1993); and it is further

**ORDERED** that the complaints filed with this court in the following cases, which were consolidated under the above-captioned case, are hereby dismissed: Court Nos. 91–10–00720, 91–10–00731, 91–10–00732, 91–10–00733, 91–10–00734, 91–10–00740, 91–10–00741, and 91–10–00744.